UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH MEREDITH ECKER, as
Guardian of ROBERT RAYMOND ECKER,

                Plaintiff,                    Civil Case No. 09-14691
                                                  Honorable Patrick J. Duggan

v.

ALLSTATE INSURANCE CO.,

                Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE APPLICATION OF *CONTRA NON VALENTEM* AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A SPECIAL PRETRIAL ORDER REGARDING THE APPLICATION OF *CONTRA NON VALENTEM* AT TRIAL**

Plaintiff Kenneth Ecker ("Plaintiff"), as guardian of Robert Ecker ("Robert"), filed this lawsuit on February 24, 2009, seeking to recover personal attendant care benefits under Michigan's no-fault insurance act that Robert required allegedly as a result of a closed head injury he suffered in a September 9, 1998 motor vehicle accident. Plaintiff seeks to recover attendant care benefits from July 2000– when he began caring for Robert– until the present. Seeking to avoid the limitation on damages in the no-fault act's "one-year-back" rule, Michigan Compiled Laws § 500.3145(1), Plaintiff filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on November 2, 2012, regarding the application of the doctrine of *contra non valentem*. The motion has been fully briefed and the Court held a motion hearing on February 7, 2013.

For the reasons that follow, the Court denies Plaintiff's motion for partial summary judgment.

## Factual and Procedural Background

On September 9, 1998, Robert was involved in a motor vehicle accident in which his vehicle was hit head-on.  Robert was unrestrained and suffered a severe closed head injury.  At the time, he was thirty years old, worked in construction, and was married to Lori Ecker ("Lori").  Allstate was the no fault insurer and it thereafter paid all no fault benefits which were submitted except those at issue in this lawsuit.  Lori was appointed as Robert's guardian after the accident and attorneys assisted them with his applications for no-fault and worker's compensation benefits.

Following the motor vehicle accident, Robert was hospitalized for several months. He then received inpatient rehabilitation at Sparrow Hospital from October 7 until November 16, 1998, at which time he was discharged to Hope Network Residential facility.  (Pl.'s Resp. Ex. 3 at 2.)  Robert remained at Hope Network on an inpatient basis until December 6, when he was discharged to move home with his wife and guardian, Lori.  (*Id*. at 19.)  At the time of discharge, Robert "needed 24-hour supervision and had cognitive and physical limitations."  (*Id*.)

On January 8, 1999, Robert met with Robert Handel, D.O., who was assigned to serve as his rehabilitation specialist.  (Pl.'s Mot. Ex. 4 at 3.)  Dr. Handel noted that Robert was "independent in his mobility and ADL's [activities of daily living]" and sleeping and eating well.  (*Id*.)  According to Dr. Handel, Robert showed signs of short term memory

2

deficits, but his long term memory was intact.  On this date, Dr. Handel reduced Robert's attendant care to three (3) hours a day.  (*Id*.)

Robert thereafter received outpatient care at various facilities and continued to reside with Lori.  However, in early July 2001, Lori left Robert and he moved in with Plaintiff, his father.  (Pl.'s Mot. Ex. 4 at 17.)  On March 24, 2003, Robert left his father's home on a motorcycle and subsequently crashed the bike.  Robert received emergency medical treatment at the University of Michigan Hospital ("UofM"), where doctors diagnosed him with three intra-cranial bleeds: a subdural hematoma, a left temporal intra-parenchymal hemorrhage, and a subarachnoid hemorrhage.  (Def.'s Mot. Ex. D at 12.)  He also had multiple thoracic vertebral fractures.  (*Id*. at 10.)  Robert remained at UofM until May 5, 2003, when he was discharged with instructions for 24-hour supervision.  (*Id*. at 29.)  Subsequent reports reflect that Robert continued to need 24-hour supervision.  (*See, e.g.,* Pl.'s Resp. Exs. 7, 11.)

In early 2006, Plaintiff contacted Allstate regarding compensation for the attendant care services he was providing Robert.  In January 2009, Allstate issued a payment of $20,760 to Plaintiff, reflecting compensation for six hours of daily attendant care during 2008.  Allstate informed Plaintiff that it was limiting payment to the past year pursuant to the one-year-back rule in Michigan's no-fault act.

Seeking payment for prior and more extensive attendant care, Plaintiff filed this action on February 24, 2009 in the Circuit Court for Ingham County, Michigan.  Allstate removed the lawsuit to this Court based on diversity jurisdiction on December 2, 2009.

## Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).

## Plaintiff's Argument for Partial Summary Judgment

In his motion for partial summary judgment, Plaintiff seeks to avoid the no-fault act's one-year-back rule and recoup attendant care costs incurred more than one year before this lawsuit was filed through application of the equitable doctrine of *contra non valentem*.  This doctrine has been defined as "the rule that a limitations or prescriptive period does not begin to run against a plaintiff who is unable to act . . .."  Black's Law Dictionary (9th ed. 2009).  Plaintiff argues that, because of his brain injury, Robert was not able to seek timely attendant care coverage.  If there is a question of fact as to whether Robert is a person entitled to assert the doctrine, Plaintiff asks the Court for a special pretrial order pursuant to Federal Rule of Civil Procedure 16(2) to formulate the issues and adopt special procedures regarding applicability of the doctrine in this case.

## Applicable Law and Analysis

Michigan's no-fault act contains the following statute of limitations relevant to personal protection insurance benefits:

4

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. *However*, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. . . .

Mich. Comp. Laws § 500.3145(1) (emphasis added). The Michigan Supreme Court has interpreted this provision as containing three limitation periods: two regarding the time for filing suit and one applying to the period for which benefits may be recovered. *DeVillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 574, 702 N.W.2d 539, 547 (2005) (citing *Welton v. Carriers Ins. Co.*, 421 Mich. 571, 365 N.W.2d 170 (1984)).

The *Welton* Court summarized the three limitation periods in section 3145(1) as follows:

> (1) An action for personal protection insurance . . . benefits must be commenced not later than one year after the date of accident, *unless* the insured gives written notice of injury or the insurer previously paid . . . benefits for the injury.
>
> (2) *If* notice has been given or payment has been made, the action may be commenced at any time within one year after the most recent loss was incurred.
>
> (3) Recovery is limited to losses incurred during the one year preceding commencement of the action.

421 Mich. at 576, 365 N.W.2d at 172 (emphasis in original). The last period is referred to as the "one-year-back" provision. *See Devillers*, 473 Mich. at 574, 702 N.W.2d at 547. It

is a limitation on damages rather than a limitation on when a lawsuit may be filed.

*Joseph v. Auto Club Ins. Ass'n*, 491 Mich. 200, 208, 815 N.W.2d 412, 416 (2012).

The Michigan Supreme Court has held that the one-year-back rule is not

susceptible to tolling, concluding that the statute's plain, clear, and unambiguous

language limits losses to those incurred within one year prior to the filing of the lawsuit

and this limitation "cannot be judicially revised or amended to harmonize with the

prevailing policy whims of members of th[e] Court." *Devillers*, 473 Mich. at 582-83, 702

N.W.2d at 552.  The *Devillers* Court reasoned:

> [I]f a court is free to cast aside, under the guise of equity, a plain statute
> such as § 3145(1) simply because the court views the statute as "unfair,"
> then our system of government ceases to function as a representative
> democracy.  No longer will policy debates occur, and policy choices be
> made, in the Legislature.  Instead, an aggrieved party need only convince a
> willing judge to rewrite the statute under the name of equity.  While such an
> approach might be extraordinarily efficient for a particular litigant, the
> amount of damage it causes to the separation of powers mandate of our
> Constitution and the overall structure of our government is immeasurable.

*Id*. at 591, 702 N.W.2d at 556-57.  Recently in *Joseph*, the Court reaffirmed the limitation

on the judiciary's ability to expand the "plain, clear, and simple language" of the one-year

limitation on damages when it held that the minority/insanity tolling provision in

Michigan Compiled Laws Section 600.5851(1) cannot be applied to toll the one-year-

back rule.  491 Mich. at 215-16, 815 N.W.2d at 420-21.

In addition to relying on the plain language of Section 500.3145(1), the *Joseph*

Court reasoned that the limitation on damages was enacted by the legislative as

compromise designed to make the no-fault system sustainable and that judicial tinkering

6

with the limitation would put the system at risk:

> The one-year-back rule codifies an integral part of the legislative
> compromise that is the no-fault act, and invalidating that compromise will
> threaten the continued fiscal soundness of our no-fault system.  Given that
> Michigan is the only state with a no-fault automobile-injury reparations
> scheme with mandatory, unlimited, lifetime medical benefits, the legislature
> adopted a unique approach to defining the temporal limitations for filing
> suit without allowing open-ended liability or time-barring claims before
> they accrue.  The Legislature addressed this problem by enacting the one-
> year-back rule, which limits recovery to losses incurred within one year
> before suit was file.  Thus, the creation of MCL 500.3145(1) was the
> Legislature's reasonable and simple approach to resolving the problem of
> allowing a reasonable amount of time for pursuing a claim while protecting
> the fiscal integrity of the no-fault system. . . . Permitting a claimant to
> recover all losses incurred both before and after an action is filed, without
> any limitation, would nullify this legislative compromise and render the no-
> fault system unsustainable.

491 Mich. at 220-21, 815 N.W.2d at 423.  This language and language used by the

Michigan Supreme Court in its prior decisions, *see supra*, leave no doubt that judges may

not apply equitable or statutory tolling to tinker with the one-year-back rule's preclusion

of the recovery of no-fault losses arising more than one year before the filing of an action.

It is the Michigan Supreme Court's decisions, rather than those of the State's trial courts

that Plaintiff cites, that this Court must follow in deciding how to apply Michigan law.

This Court therefore concludes as a matter of law that the equitable doctrine of

*contra non valentem* is not applicable in this case and the one-year back rule precludes

Plaintiff's recovery of no-fault losses arising more than one year before the filing of this

action.  As such, the Court need not decide whether Robert's brain injury prevented him

from bringing this lawsuit earlier.  Pursuant to Michigan Supreme Court precedent,

"courts are [not] free to cast aside [the] plain statute in the name of equity," regardless of how tragic a case may be.  *Trentadue v. Gorton*, 479 Mich 378, 406-07, 738 N.W.2d 664, 680 (2007) (citing *Devillers*, 473 Mich. at 591, 702 N.W.2d at 556-57).  The Court therefore is denying Plaintiff's motion for partial summary judgment.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for partial summary judgment is **DENIED**.

Dated: February 15, 2013                    s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE


Copies to:
George T. Sinas, Esq.
Stephen H. Sinas, Esq.
James L. Borin, Esq.
Ian C. Simpson, Esq.